IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DUKE F. CRANFORD,

    Plaintiff,

vs.                              Case No.: 4:10cv10-RH/WCS

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding *pro se*, has filed an amended complaint. Doc. 8. Plaintiff is suing both the Florida and Nevada Departments of Corrections as well as the Secretary of the Florida Department of Corrections and the Director of the Nevada Department of Corrections. Doc. 8.

Plaintiff alleges that he is unable to find Nevada case law and prepare legal documents in an effort to challenge his 1977 Nevada criminal conviction.[1] Doc. 8, p. 8. Plaintiff alleges that he has been trying to challenge his criminal conviction in Nevada

---

[1] Plaintiff is in the custody of the Florida Department of Corrections due to a transfer pursuant to an interstate compact. Doc. 8, p. 7. He is serving a life sentence imposed by Nevada for murder.

from Florida since July, 1997. *Id.* Plaintiff contends he has no access to the Nevada cases cited in the Nevada court's opinions. *Id.* Plaintiff alleges "irreparable harm has been and continues to be done to the Plaintiff by his being denied access to Nevada Reporters, Pacific Reporter, Nevada local Rules of Court, Nevada Appellate Procedures, and other research material essential to the preparation of legal document to seek judicial relief via his trial court." *Id.*, at 8-9. Plaintiff argues that considerations of "the length of time Plaintiff has been incarcerated is mooted by Plaintiff's recent filings, as well as issues yet to be raised that are not subject to the time bar of any judiciary." *Id.*, at 10.

An inmate's claim that he is denied access to the courts is based upon the First Amendment of the United States Constitution. *See* Bounds v. Smith, 430 U.S. 827, 97 S. Ct. 1491. 52 L. Ed. 2d 72 (1977) (reaffirming that inmates have a fundamental constitutional right of meaningful access to the courts under the First Amendment), and cases cited therein. In presenting a First Amendment claim regarding the denial of access to the courts, an inmate must also allege "actual injury." Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996). An inmate's First Amendment right is not an "abstract, freestanding right to a law library or legal assistance." Lewis, 518 U.S. at 351-57, 116 S.Ct. at 2180-82. Thus, an inmate must show "actual injury" by demonstrating that the conduct complained of frustrated or impeded the inmate's efforts to pursue a nonfrivolous legal claim, *Id.*, at 352-54, 116 S. Ct. at 2181, and the "legal claim must be an appeal from a conviction for which the inmate was incarcerated, a habeas petition, or a civil rights action." Bass v. Singletary,

143 F.3d 1442, 1445 (11th Cir. 1998), *citing* <u>Lewis</u>, 518 U.S. at 352-57, 116 S. Ct. at 2181-82.[2]

In <u>Lewis</u>, the Court announced the following three-part test for determining whether a denial of access to the courts has, in fact, caused actual injury under the Constitution:

1. The action must involve an attack to the prisoner's sentence, directly or collaterally, or challenge the conditions of his confinement.

2. The prisoner must show the claim to which he was impeded was *not frivolous*.

3. The conduct complained of must have *impeded* the inmate's capability to file the nonfrivolous action challenging his sentence or the conditions of his confinement.

*Id.* at 1281-83 (emphasis added).

Attached to Plaintiff's amended complaint are several exhibits which are referenced by Plaintiff as documents that will show that "his latest filing[s] to his trial court . . . were both objected to and denied by case citings Plaintiff has no access to." Doc. 8, p. 8, *citing* exhibits A, B, C.

Plaintiff also references a response to an inmate request for copies of legal materials from Nevada that was denied and advised: "The research material you're requesting is not in the Department's law libraries." Doc. 8, p. 9, *citing* Ex. E. The response, however, also added, "If you need such materials you're to follow the

---

[2] Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration. <u>Lewis</u>, 116 S. Ct. at 2182.

procedures set forth in Ch. 33-501.301(6)(c). Doc. 8, Ex. E (doc. 8, p. 54). Rule 33-501.301(6)(c) provides:

> (c) Inmate requests to secure law materials not in the department's law libraries shall be submitted to the library services administrator for review and approval. Only requests for primary source material shall be approved.
>
>     1. Inmates needing such materials are to submit Form DC5-152, Law Library Interlibrary Loan Request, to the institution's law library supervisor. Form DC5-152, Law Library Interlibrary Loan Request, is to include the full and complete citation of the material needed, and a written justification on why the material is needed. If any deadlines apply, the date of the deadline is to be noted on Form DC5-152, Law Library Interlibrary Loan Request. The law library supervisor is then to forward the request to the library services administrator in the central office. The correct mailing address is: Department of Corrections, Attention: Library Services, 2601 Blair Stone Road, Tallahassee, FL 32399-2500.
>
>     2. The library services administrator or designee shall review the request and either approve it or disapprove it. If the request is disapproved, the reason for disapproval will be noted on the request and the request shall be returned to the requesting law library. The law library supervisor will provide a copy of Form DC5-152, Law Library Interlibrary Loan Request, to the inmate. If the request is approved, the request shall be forwarded to the Florida State University law library for completion. When the completed work is received from the Florida State University law library, it shall be mailed to the requesting law library. The law library supervisor will provide a copy of Form DC5-152, Law Library Interlibrary Loan Request, and the requested material to the inmate.

FLA. ADMIN. CODE R. 501.301(6)(c) (2009).

This Rule plainly shows that Plaintiff has reasonable access to Nevada legal materials. The rules permit access to such information through an interlibrary loan request. Plaintiff has not alleged that he has ever made such a request or that his request was denied.[3]

---

[3] One of the items specifically requested by Plaintiff was "Nevada Rules of Appellate Procedure 3(A)(2). Doc. 8, p. 54. However, that rule was provided to Plaintiff as a quotation on the bottom of the two notices of deficiency received by Plaintiff. Doc. 8, pp. 55, 56 (Exhibits F, G).

Further, Plaintiff has neither shown that he has a nonfrivolous claim to litigate, or that actions by Defendants have impeded his ability to present the claim.

Plaintiff has been able to file documents in the Nevada courts. Plaintiff has not alleged with specificity that the denial of his post-conviction motions were because he did not have access to any specific Nevada law.

The only allegedly nonfrivolous claim is not described in Plaintiff's complaint, but in Exhibit A, attached to the complaint. Exhibit A is a "motion to vacate and set aside," Plaintiff filed in the District Court of Clark County, Nevada, on June 26, 2009 (date of mailing). Doc. 8, p. 18. There Plaintiff asserted that the court should "vacate and set aside its April 20, 1977, order granting the plaintiff's motion to enter into the trial evidence the inadmissible hearsay evidence of" a codefendant and a detective. *Id.* Plaintiff contended that the evidence (a videotape) was hearsay evidence improperly admitted under the coconspirator exception to the Nevada hearsay rule, which Plaintiff cites as "N.R.S. 51.035(3)(e)." *Id,* at 22. Plaintiff contends the prosecutor committed fraud on the court by claiming that he had "proof of the conspiracy . . . ." *Id.*, at 22-23. Plaintiff contends that the prosecutor failed to present any evidence of the conspiracy. *Id.*, at 24. At the conclusion of the trial, Plaintiff's counsel sought a mistrial based on that failure, but the court denied the motion, but nonetheless barred the prosecutor "from arguing a conspiracy theory to the jury during closing summation as that argument would be outside the evidence presented." *Id.* Plaintiff states the prosecutor still made reference to a conspiracy theory in his closing argument, causing the court to sustain Plaintiff's objection and to caution the jurors: "You are instructed to disregard the argument of Mr. Hammer regarding a conspiracy." *Id.*, at 25. Plaintiff contends his

conviction "was the true product of fraud on the court that has gone uncorrected for thirty-two years." *Id.*, at 32.

The State of Nevada opposed Plaintiff's motion to vacate and set aside. Doc. 8, exhibits B, C, D. (doc. 8, pp. 42-53). The State's opposition reveals that Plaintiff was convicted of first degree murder on May 7, 1977, and sentenced on June 21, 1977, to life without the possibility of parole. Doc. 8, p. 43 (Ex. B). Plaintiff appealed his conviction to the Nevada Supreme Court and on June 20, 1979, "in a published opinion, the Nevada Supreme Court rejected [Plaintiff's] contentions and affirmed his conviction and sentence." *Id.*

Indeed, the precise claim raised in this latest state post-conviction motion was denied in 1979 on direct appeal by the Nevada Supreme Court. Cranford v. State, 95 Nev. 471 (Nev. 1979). Plaintiff was convicted under the name Bonnie Fred Cranford. *Id.* The court related the following from the trial record:

> At 5:15 p. m. on November 11, 1976, Montena Smith entered a storefront where the Las Vegas Metropolitan Police Department was conducting a videotaped undercover fencing operation. Smith sold a late model Cadillac Seville automobile to a police sergeant for $600. The vehicle was traced to Lloyd Brooker, controller of Cashman Cadillac. Brooker's body was discovered in the desert on the following day.
>
> During the course of the fencing transaction, the undercover officer engaged Smith in conversation to learn the circumstances of the theft and the existence of any cohorts involved in its commission. Smith informed the officer that the owner of the car was in the desert where Smith had knocked him out and that the other parties to the theft and assault of Brooker were waiting at a liquor store "down the street". The entire transaction, including the conversation, was recorded on videotape.
>
> Shortly after the conversation was recorded, Smith, Cranford and James Lewis were arrested on an unrelated charge at a bar located near the undercover fencing operation. Subsequently, Cranford's fingerprints were lifted from the trunk lid and a door of the Cadillac which had allegedly

been stolen from Brooker by Smith and his cohorts, and blood matching the type of Brooker's was found on Lewis's pants. Certain items of personal property belonging to the victim were later discovered in the possession of Lewis.

596 P.2d at 490. The court held that while the admissibility of a coconspirator's statements is not predicated on a conspiracy charge, the lower court had correctly ruled that independent evidence that a conspiracy existed is needed. *Id.* The court said that the evidence need only be slight. *Id.* The court concluded:

> Here, the existence of Cranford's fingerprints on the victim's Cadillac, which Smith sold to the undercover police officer, as well as Cranford's presence and companionship with Smith and Lewis shortly after the transaction was completed are prima facie evidence that Cranford was involved in a conspiracy with Smith and Lewis to steal the car. Thus, a sufficient foundation existed for admitting the statements made by Smith which were recorded on the videotape and which implicated Cranford in the murder of Brooker.

*Id.* (footnote omitted).

Plaintiff has subsequently attacked his conviction many times. In 1982, Plaintiff filed a petition for writ of habeas corpus asserting ineffective assistance of counsel. Ex. B (doc. 8, p. 43). On September 14, 1983, following an evidentiary hearing, the petition was denied. *Id.*

Plaintiff filed a second habeas petition in 1989, which was summarily dismissed the following day. *Id.* Plaintiff appeal that dismissal to the Nevada Supreme Court, and the appeal was dismissed on April 19, 1990. *Id.*

Plaintiff filed a third habeas petition in August of 2004. *Id.* That petition was denied on October 4, 2004. *Id.* Plaintiff then filed a fourth habeas petition on June 6, 2005, which was dismissed on August 10, 2005. *Id.*, at 43-44.

Plaintiff first filed a "motion to correct fraud on the court" on April 17, 2009, which was denied on April 30, 2009. Doc. 8, p. 44. Plaintiff then filed a notice appeal on May 18, 2009, followed by a motion for reconsideration on May 20, 2009. *Id.* The Nevada Supreme Court dismissed the appeal on June 5, 2009. *Id.* Plaintiff then filed the "motion to vacate and set aside," which was more in "the nature of a Motion to Reconsider, on June 26, 2009." *Id.*

The State argued that under the Eighth Judicial District Court Rules, "no motions once heard and disposed of may be renewed in the same cause, nor may the same matters therein embraced be reheard . . . ." *Id.*, at 44. The State argued that Plaintiff's motion was "not properly before the court" for this reason. *Id.* The State submitted that the issues had already been decided and there was "no need for the Court to reconsider its April 20, 1977 decision denying Defendant's Motion to Suppress." *Id.*

Plaintiff's motion to vacate and set aside was denied on July 14, 2009. Doc. 8, p. 52. Plaintiff then filed a motion for an evidentiary hearing on July 27, 2009, which the State opposed on the grounds that it was moot since the motion to vacate and set aside had been denied. *Id.*

The litigation history set forth above shows that Plaintiff has enjoyed unimpeded access to the Nevada state and federal courts. Plaintiff has been challenging his June 21, 1977, for many years, without success.

Plaintiff has not shown that he *now* has a nonfrivolous claim to litigate. His claims are undoubtedly barred under Nevada and federal law. Under Nevada law, absent "good cause shown for delay, a petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of
Case No. 4:10cv10-RH/WCS

conviction or, if an appeal has been taken from the judgment, within 1 year after the Supreme Court issues its remittitur." N.R.S. 34.726 (1991). To the degree these claims are the same, they are successive and will not be heard. To the degree the claims are new, they will likely be procedurally barred.

Judicial notice from the electronic docket is taken that when Plaintiff attempted to file a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the District of Nevada in January of 2010, the court determined that he could not proceed until he first obtained "permission from the court of appeals to proceed . . . ." Case 3:10cv57-LRH/VPC, doc. 3. The court noted that in 2007, the court of appeals had "denied authorization to file a second or successive habeas corpus petition." _Id._ Plaintiff, therefore, is well into the successive § 2254 petition stage in federal court in Nevada. Absent permission from the court of appeals, successive petitions are not heard on the merits regardless of the potential merit of the claims.[4]

Judicial notice is further taken that Plaintiff attempted to challenge the admission of the videotape evidence in his 1987 petition for writ of habeas corpus pursuant to § 2254. Cranford v. Sumner, 672 F.Supp. 453 (D. Nev. 1987). There, Plaintiff raised eleven claims for relief:

1. That the use of a videotaped confession of a codefendant which implicated the petitioner violated his sixth amendment right to confrontation;

---

[4] A claim raised in a second or successive § 2254 petition that was presented in a prior petition shall be dismissed, and a claim which was not presented in a prior petition shall be dismissed unless certain conditions are satisfied. 28 U.S.C. § 2244(b)(2). However, "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." § 2244(b)(3)(A).

Case No. 4:10cv10-RH/WCS

2. That the use of the videotape constituted inadmissible hearsay when there was no showing of the declarant's unavailability;

3. That the undercover police officer's reiteration of the videotaped testimony also constituted inadmissible hearsay;

4. That the products of the petitioner's warrantless arrest were improperly admitted into evidence;

5. That 129 days passed from the date of arrest until a judicial determination of probable cause to hold the petitioner;

6. That the prosecutor's comments regarding an uncharged conspiracy during closing argument were prejudicial, in the absence of a corrective instruction;

7. That the verdict at trial was unsupported by the evidence;

8. That the destruction or loss of the videotape after direct appeal has prejudiced the petitioner;

9. That he was not provided a transcript;

10. That one of the jury instructions removed the burden of proof from the prosecution, and improperly commented on the petitioner's failure to testify;

11. That petitioner was denied effective assistance of counsel at trial.

Cranford, 672 F.Supp. at 454 -455. The petition was denied. *Id.*, at 459. Several of the claims presented in the 1987 § 2254 petition are related to Plaintiff's claims in this case. Although some were denied on the basis of procedural default, others were rejected on the basis of no prejudice to Plaintiff (count six), and the merits (count three). *Id.*, at 458-59. Particularly as it relates to this case, the Nevada District Court concluded as to count three:

> As noted above, the trial court found that the evidence at issue qualified under the Nevada Rules of evidence as a coconspirator exception to hearsay. Under the *Bourjaily* rule, this finding makes any inquiry into independent indicia of

reliability superfluous. This argument therefore does not establish a basis for habeas corpus relief.

Cranford, 672 F.Supp. at 459.

Thus, Plaintiff challenged the admissibility of the videotaped evidence and argued improper closing argument by the prosecutor referring to a conspiracy over twenty years ago. Plaintiff has plainly failed to show that he has a nonfrivolous claim to pursue. He also has failed to show how he has been impeded in his pursuit of any claim. Therefore, this action fails to state a claim upon which relief may be granted for a First Amendment denial of access to court.

**Conclusion**

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's amended complaint, doc. 8, be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on March 8, 2010.

                s/    William C. Sherrill, Jr.
                **WILLIAM C. SHERRILL, JR.**
                **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**